Toni O'BRIEN, Appellant,

v.

CITY OF GREERS FERRY, Jack McKinney, Mayor, Harley Cosby, Alderman, In their individual and official capacities, Appellees.

Toni O'BRIEN, Appellee,

v.

CITY OF GREERS FERRY, Jack McKinney, Mayor, Harley Cosby, Alderman, In their individual and official capacities, Appellants.

Nos. 88–1468, 88–1534.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 12, 1988.

Decided May 1, 1989.

Rehearing and Rehearing En Banc Denied June 22, 1989.

John Wesley Hall, Jr., Little Rock, Ark., for appellant.

David Keith Ruthledge, Batesville, Ark., for appellee.

Before McMILLIAN and BEAM, Circuit Judges, and WHIPPLE,[*] District Judge.

BEAM, Circuit Judge.

Toni O'Brien was awarded damages in the amount of $2400 in an action brought pursuant to 42 U.S.C. §§ 1983, 1985 (1982) against Jack McKinney and Harley Cosby. The jury found for the City of Greers Ferry in the same action. O'Brien appeals from the district court's [1] denial of her request for attorney's fees. McKinney and Cosby cross-appeal from the denial of their motion for judgment notwithstanding the verdict and the receipt of testimony and exhibits of the city council into evidence. Greers Ferry cross-appeals from the district court's refusal of its application for attorney's fees. We affirm in part and reverse and remand in part.

## I. FACTS

In September 1985, Toni O'Brien, an alderwoman in Greers Ferry, Arkansas, was sued in her official capacity for slander by James Weed. Weed alleged that O'Brien told another alderman, Harley Cosby, that money "changed hands" at city hall between Weed and the mayor of Greers Ferry, Jack McKinney.

The Arkansas Municipal League Defense Program (AMLDP) had established a fund to defend officials and employees of member municipalities in lawsuits arising out of their positions as officials or employees. The AMLDP agreed to defend O'Brien in the slander action if Greers Ferry would pay a $2,000 "deductible" amount. O'Brien then introduced a resolution at a city council meeting to appropriate $2,000 for the "deductible." The city council voted not to appropriate the funds.

In December 1985, the slander action was dismissed without prejudice. O'Brien expended $2,200 of her own money to defend herself in the action.

---

* The HONORABLE DEAN WHIPPLE, United States District Judge for the Western District of Missouri, sitting by designation.

1. The Honorable Elsijane T. Roy, United States District Judge for the Eastern District of Arkansas.

In January 1986, Weed filed the instant action in state court against O'Brien in her individual capacity, presenting essentially the same allegations as in the first slander action. O'Brien removed the action to federal court. O'Brien counterclaimed against Weed and cross-claimed against Greers Ferry, McKinney, and Cosby. The cross-claim alleged that the refusal to appropriate $2,000 was an attempt to force O'Brien to resign from the city council in violation of sections 1983 and 1985. O'Brien based her civil rights claims on retaliation for exercise of free speech rights, sex-based animus by Cosby which led him to attempt to keep women off the city council, and conspiracy to deprive her of constitutional rights.

On May 14, 1986, Greers Ferry, McKinney, and Cosby made a formal offer of judgment to settle the case. O'Brien rejected the offer and proceeded to trial.

Before trial, Weed and O'Brien agreed to dismiss their respective claims against each other. At trial, the jury awarded O'Brien $2,200 in compensatory damages and $200 in punitive damages against McKinney and Cosby in their individual capacities. As indicated, Greers Ferry was exculpated.

After trial, O'Brien and Greers Ferry each filed petitions for attorney's fees, and McKinney and Cosby filed a motion for judgment notwithstanding the verdict. The district court disallowed attorney's fees incurred by O'Brien prior to removal to federal court and all fees incurred after the offer of judgment. The district court denied McKinney's and Cosby's motion for judgment notwithstanding the verdict and Greers Ferry's request for attorney's fees. These appeals followed.

## II.  DISCUSSION

### A.  Denial of O'Brien's Attorney's Fees Prior to Removal

■   O'Brien asserts that she is entitled to attorney's fees which accrued prior to the removal of the action to federal court,

specifically, those incurred in defense of the dismissed state court action. She argues that 42 U.S.C. § 1988 (1982)[2] authorizes such fees because she was a prevailing party in her section 1983 claim.

The award of attorney's fees under section 1988 is a matter uniquely for the district court's discretion and will not be overturned absent an abuse of discretion or an error in implementing the governing legal standards. *Wilmington v. J.I. Case Co.,* 793 F.2d 909, 923 (8th Cir.1986).

Here, we do not discern an abuse of discretion or an error in implementing the governing legal standards by the district court. The jury awarded O'Brien the attorney's fees of $2,200 as compensatory damages. Therefore, if we were to allow O'Brien recovery for the same attorney's fees under a section 1988 calculation, we would be permitting double recovery. We conclude that the district court correctly denied the section 1988 request for attorney's fees accrued prior to removal of the case to federal court.

### B.  Denial of O'Brien's Attorney's Fees after Offer of Judgment

■   Pursuant to Fed.R.Civ.P. 68, Greers Ferry made O'Brien a formal offer of judgment of $6,000, not including costs and attorney's fees. As indicated, O'Brien rejected the offer. The district court calculated that the attorney's fees incurred in federal court prior to the offer of judgment ($3,394.99) and damages awarded by the jury ($2,400) were less than the offer of judgment ($6,000). Therefore, the court denied recovery of attorney's fees incurred after the offer of judgment was made. O'Brien asserts that the trial court, in comparing the actual recovery with the offer of judgment, should have included the attorney's fees of $2,200 incurred in the earlier state action. O'Brien argues that since the amount of attorney's fees accrued in defending the state action ($2,200), attorney's fees incurred in the federal action prior to the offer of judgment ($3,394.99), and dam-

---

**2.** Section 1988 provides that in section 1983 actions "the court, in its discretion, may allow the prevailing party * * * a reasonable attor-

ney's fee as part of the costs." 42 U.S.C. § 1988 (1982).

ages awarded by the jury ($2,400) exceeds the offer of judgment ($6,000), the trial court should have awarded attorney's fees incurred after the offer of judgment.

"Civil rights plaintiffs—along with other plaintiffs—who reject an offer more favorable than what is thereafter recovered at trial will not recover attorney's fees for services performed after the offer is rejected." *Marek v. Chesny,* 473 U.S. 1, 10, 105 S.Ct. 3012, 3018, 87 L.Ed.2d 1 (1985). Therefore, we must compare the offer of judgment with the actual recovery to determine which was greater.

We start with the figure of $6,000 stated in the offer of judgment. Because the offer of judgment in this case did not purport to include attorney's fees, the pre-offer attorney's fees must be added to the offer of judgment. *Marek,* 473 U.S. at 6, 105 S.Ct. at 3015–16 (stating that "if the offer does not state that costs are included and an amount for costs is not specified, the court will be obliged by the terms of the Rule [68] to include in its judgment an additional amount which in its discretion it determines to be sufficient to cover the costs") (citations omitted). Thus, Greers Ferry's offer really included the amount recited ($6,000) plus the pre-offer attorney's fees ($3,394.99) for a total of $9,394.99.

The jury awarded O'Brien damages in the amount of $2,400. To this, we add the pre-offer attorney's fees of $3,394.99. *See Grosvenor v. Brienen,* 801 F.2d 944, 945–48 (7th Cir.1986) (holding that pre-offer attorney's fees are to be added to the judgment award to determine whether the judgment award was more favorable than the offer of judgment). We do not include the attorney's fees incurred in the state action. As we stated in our previous discussion, the attorney's fees incurred in the state action and the damages awarded by the jury are one and the same. Accordingly, we find that the actual amount of recovery was the sum of the jury award ($2,400) and the pre-offer attorney's fees ($3,394.99) for a total of $5,794.99.

We conclude that the offer of judgment ($9,394.99) was greater than the actual re-

covery ($5,794.99). In fact, the offer of judgment ($9,394.99) exceeded the actual recovery ($5,794.99) plus the $2,200 in fees incurred in defending the dismissed state action. Thus, the district court correctly denied recovery by O'Brien of attorney's fees incurred after the offer of judgment was made.

C. Denial of the Motion for Judgment Notwithstanding the Verdict

McKinney and Cosby filed a motion for judgment notwithstanding the verdict which the district court denied. McKinney and Cosby argue that the motion should have been granted because a violation of section 1983 or 1985 did not occur. We review a denial of a motion for judgment notwithstanding the verdict according to the following standard:

In reviewing the district court's denial of a motion for judgment n.o.v., we consider the evidence in the light most favorable to the prevailing party, assuming as true all facts that the prevailing party's evidence tended to prove, and giving the prevailing party the benefit of all favorable inferences. This court will not overturn the district court's ruling on a motion for judgment n.o.v. if the evidence is susceptible of any reasonable inference sustaining the prevailing party's position.

*Griffin v. Hilke,* 804 F.2d 1052, 1055 (8th Cir.1986) (citation omitted).

"To establish a cause of action under 42 U.S.C. § 1983, the plaintiff[ ] must establish (1) that [she has] been deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was caused by a person acting under color of state law." *Buller v. Buechler,* 706 F.2d 844, 846–47 (8th Cir.1983) (citation omitted). McKinney and Cosby first contend that there was not substantial evidence that they deprived O'Brien of a constitutional right.

■ A city council is not free to retaliate against a member of the council because of such member's exercise of first amendment rights. *See Kucinich v. Forbes,* 432 F.Supp. 1101, 1110–14 (N.D.Ohio 1977) (holding that the first amendment prohibit-

ed a city council from suspending one of its members for making allegedly defamatory remarks about another member during a council meeting). Although *Kucinich* involved a suspension, we can see no reason to distinguish actual suspension from constructive suspension where one is forced to resign from a position due to an intolerable situation.

■ With regard to deprivations under the fourteenth amendment, it has been held that "[i]n sex discrimination cases brought under the Fourteenth Amendment [via section 1983], plaintiff must demonstrate that the discrimination was intentional." *Croteau v. Fair*, 686 F.Supp. 552, 553 (E.D.Va. 1988) (citation omitted). The burden of proving intentional discrimination in such cases is governed by *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed. 2d 471 (1977) and *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). *See Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097, 1102 n. 2 (8th Cir.1988); *Hervey v. City of Little Rock*, 787 F.2d 1223, 1233 n. 7 (8th Cir. 1986). Thus, the plaintiff must demonstrate that a sexually discriminatory purpose was a motivating factor in the defendant's decision. The burden then shifts to the defendant to establish by a preponderance of the evidence that the same decision would have resulted even if the impermissible purpose had not been considered.[3] *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576; *Arlington Heights*, 429 U.S. at 270–71 n. 21, 97 S.Ct. at 566 n. 21. With the foregoing principles in mind, we consider the evidence to determine whether O'Brien was deprived of a constitutional right.

O'Brien presented evidence that McKinney and Cosby were critical of her voting record and her presence on the council. The evidence showed that Cosby informed Weed of O'Brien's alleged accusations of bribery. O'Brien testified that both McKinney and Cosby told her that if she resigned, Weed's lawsuit would be dropped. Cosby voted against appropriating $2,000 for the AMLDP, and McKinney did not support O'Brien's motion for the appropriation as he had earlier promised. Rachel Jackson, the Greers Ferry recorder-treasurer, testified that Cosby informed her that they would bankrupt O'Brien. With regard to the equal protection charge, Jackson also testified that Cosby stated that women did not belong on the city council and that Cosby made a number of sexist remarks.

Assuming the foregoing is true as required by *Griffin*, we conclude that the jury could have reasonably inferred that McKinney and Cosby attempted to force O'Brien to resign from the council because of the exercise of her first amendment rights. The jury also could have reasonably inferred that sex-based animus was a motivating factor in Cosby's attempt to force O'Brien to resign and that Cosby did not prove that he would have taken the same action absent a discriminatory purpose.

■ McKinney and Cosby next argue that even if O'Brien was deprived of her constitutional rights, such deprivation was not actionable because they enjoyed legislative immunity. Local legislators, however, possess only a qualified immunity when they act in an executive capacity. *See Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 577–80 (9th Cir.1984), *cert. denied*, 471 U.S. 1054, 105 S.Ct. 2115, 85 L.Ed.2d 480 (1985). Legislators are liable for executive acts which violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.* at 578 n. 24.

■ Normally, a legislative act is a formulation of policy governing future conduct for all or a class of the citizenry. Here, a special meeting was conducted for the sole purpose of determining whether to appropriate $2,000 so the AMLDP would defend O'Brien. The vote on the appropriation was the only business conducted at the special meeting. Under these circum-

---

**3.** The defendant advanced several legitimate reasons for his actions including the inability of the city to afford the $2,000 appropriation without the occurrence of budgetary problems.

stances, we agree with the district court that the refusal to appropriate $2,000 at the special meeting was an executive act, not a legislative one. We also find that a reasonable person would have known that such conduct would tend to deprive O'Brien of the clearly established rights of free speech and equal protection. Thus, McKinney and Cosby were not clothed with legislative immunity for their acts at the special meeting.

McKinney and Cosby next argue that $2,000 could not have been appropriated because the Arkansas Supreme Court, in *Hall v. Thompson,* 283 Ark. 26, 669 S.W.2d 905 (1984), ruled that such appropriations violated the Arkansas Constitution's prohibition on legal exactions. We disagree, finding *Hall* inapplicable.

*Hall* precludes the payment of attorney's fees with municipal funds when a public official has been charged with a criminal act. Here, O'Brien has not been charged criminally. A fundamental distinction exists between one who is charged with criminal activity outside the scope of his official duties, as was the case in *Hall,* and this case which involved an appropriation for the AMLDP to defend an official sued in her official capacity. In *Hall,* "[t]here [was] no statutory authority in Arkansas allowing payment of attorney's fees for public officials and employees when they are terminated or charged with criminal offenses." *Id.* at 906. In this case, statutory authority for the payment of such fees exists. The AMLDP was established pursuant to Ark.Stat.Ann. § 14–54–101 (1987), which permits municipalities to associate for the promotion of their general welfare and to join together in the purchase of services, such as legal services.

We therefore conclude that the district court correctly denied the motion for a judgment notwithstanding the verdict. Having determined that the jury could have awarded damages under the section 1983 claim, we need not address the section 1985 claim.

### D. Denial of Greers Ferry's Motion for Attorney's Fees

Fed.R.Civ.P. 68 provides in pertinent part, "If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." Greers Ferry contends that because O'Brien rejected its offer of judgment of $6,000 and later received a judgment for less than that amount, O'Brien must, under Rule 68, pay the attorney's fees incurred by Greers Ferry after the date of the offer.

This circuit has never decided whether prevailing civil rights plaintiffs must pay their opponent's costs and attorney's fees after refusing to accept an offer of judgment that is more favorable than their recovery at trial. We are persuaded by the First Circuit's reasoning in *Crossman v. Marcoccio,* 806 F.2d 329 (1st Cir. 1986), *cert. denied,* 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987). We hold that a plaintiff who refuses an offer of judgment under Rule 68 and later fails to receive a more favorable judgment must pay the defendant's post-offer costs. We also agree with the First Circuit that attorney's fees are awardable to defendants in such cases only if the underlying statute awards such fees. In this case, Greers Ferry may only recover attorney's fees if such fees are properly awardable under section 1988, the underlying statute. *Id.* at 333–34. Under section 1988, a defendant in a civil rights case may recover attorney's fees from the plaintiff only if the action was frivolous, unreasonable, or without foundation. *Hughes v. Rowe,* 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980); *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). We conclude that O'Brien's lawsuit was not frivolous, unreasonable, or without foundation, as indicated by the recovery against McKinney and Cosby. Thus, we reverse the district court's denial of costs and affirm the denial of attorney's fees.

### III. CONCLUSION

We have carefully examined all other issues and find them to be without merit. We affirm the decision of the district court

denying attorney's fees to O'Brien and Greers Ferry and denying the motion for judgment notwithstanding the verdict. We reverse the decision of the district court refusing to award costs to Greers Ferry after the offer of judgment was made. We remand the case to the district court to determine such costs in conformity with this opinion.